## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**MARGARET CHASE-TRUJILLO,**

      Plaintiff,

vs.                                              **Civ. 02-1183 WDS**

**JO ANNE B. BARNHART,**

Commissioner of the Social Security Administration,

      Defendant.

### <u>MEMORANDUM OPINION AND ORDER</u>

This matter came before the Court upon Plaintiff's Motion to Reverse or Remand Administrative Agency Decision filed on April 11, 2003.   Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security, who determined that Plaintiff was not disabled.  The Court, having considered Plaintiff's Motion **[Doc. 10]** and Memorandum in Support of Motion **[Doc. 11]**, Defendant's Response **[Doc. 15]** and Plaintiff's Reply **[Doc. 18]**, the administrative record and applicable law, finds that Plaintiff's Motion should be granted in part, and that this matter should be remanded to the Commissioner for further proceedings in accordance with this Memorandum Opinion and Order.

### <u>BACKGROUND</u>

Plaintiff filed her application for social security disability and supplemental security income benefits on April 12, 2000, contending that her alleged disability began on October 31, 1995. Tr. 91-94.  Her application was denied at the initial and reconsideration levels. Tr. 72-73.  On August 3, 2001, Plaintiff filed a request for hearing before an Administrative Law Judge (ALJ).  Tr. 83-84.

The ALJ held a hearing on February 26, 2002, at which Plaintiff appeared and was represented by an attorney.  Tr. 39-71.  In a decision dated May 16, 2002, the ALJ denied Plaintiff's request for benefits.  Tr. 25-32.

Plaintiff filed a request for review with the Appeals Council on June 10, 2002.  Tr. 10-24. The Appeals Council denied Plaintiff's request for review on August 30, 2002, and thereby rendered the ALJ's decision the final decision of the Commissioner of Social Security.  Tr. 8-9.

Plaintiff filed this action on September 20, 2002, in which she seeks judicial review of the Commissioner's final decision. **[Doc. 1].**  The parties subsequently consented to have the undersigned United States Magistrate Judge conduct all proceedings **[Docs. 8 and 9]**, and on April 16, 2003,  this case was reassigned to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §636(c).  **[Doc. 13]**.

<u>STANDARD OF REVIEW</u>

This Court's review of the Commissioner's findings is limited.  First, the Court determines whether the Commissioner's findings are supported by substantial evidence in the record.  *Andrade v. Secretary of Health & Human Servs.,* 985 F.2d 1045, 1047 (10th Cir. 1993).  "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (quoting *Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir. 1988)) (additional citations omitted).  In determining whether the Commissioner's findings are supported by substantial evidence, the Court does not undertake a *de novo* review of the evidence.  *Sisco v. U.S. Dep't of Health & Human Servs.,* 10 F.3d 739, 741 (10th Cir. 1993).  The Court should not re-weigh the evidence, nor should it substitute its judgment for that of the Commissioner.  *Glass v. Shalala,* 43 F.3d 1392, 1395 (10th Cir. 1994).  Instead, the Court should meticulously examine the entire record to determine if the Commissioner's decision is supported by more than a scintilla, but less than a preponderance, of evidence.  *See Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir. 1988); *Sisco,* 10 F.3d at 741.

Second, the Court determines whether the Commissioner applied the correct legal standards. *Andrade*, 985 F.2d at 1047. "The 'failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal.'" *Id.* (quoting *Byron v. Heckler,* 742 F.2d 1232, 1235 (10th Cir. 1984)) (additional citations omitted).

In order to qualify for benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months, which prevents the claimant from engaging in substantial gainful activity. *See* 42 U.S.C. §423(d)(1)(A); *see also Thompson v. Sullivan,* 987 F.2d 1482, 1486 (10th Cir. 1993). The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520(a-f). The sequential evaluation process ends, if, at any step, the Commissioner finds the claimant is not disabled. *See Thompson*, 987 F.2d at 1487.

At the first three levels of the sequential evaluation process, the claimant must show: (1) that she is not engaged in substantial gainful employment; (2) that she has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; and (3) that her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpart P, App. 1. If the claimant cannot show that she has met or equaled a listing, she must show at step four that she is unable to perform work she has done in the past. 20 C.F.R. §§ 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering her residual functional capacity, age, education, and prior work experience. *Id.*

3

<u>MEDICAL HISTORY</u>

Plaintiff treated with Richard Skurla, D.O. from September 27, 1995 through January 3, 2002. Tr. 185-238, 339-50, 513-26.  Plaintiff had many visits with Dr. Skurla with varied complaints ranging from "tiredness" (Tr. 205, 211, 219, 221) to shoulder pain (Tr. 193-95, 203, 220, 225, 226, 231, 348, 350) to aching hips (Tr. 192, 349) along with many other complaints including neck pain, back pain, ankle pain, stiff hands and feet and sleep problems.  Dr. Skurla's assessments included shoulder fibrositis (Tr. 222-23), neurohormonal imbalance (Tr. 231), fatigue ( 192, 193, 240, 244-50), PF or fibromyalgia (192-96, 210-11, 340, 344-50), and chronic fatigue syndrome (189, 195, 203-05, 207, 231).  On January 25, 1996, Dr. Skurla completed an Attending Physician's Statement for Plaintiff's disability carrier, UNUM Life Insurance Company of America (UNUM). Tr. 525-26.  At that time, Dr. Skurla's primary diagnosis was Chronic Fatigue and Hormone Imbalance.  *Id.*  Dr. Skurla reported seeing Plaintiff on a monthly basis and that her symptoms included progressive fatigue, anergy, fevers, frequent sore throats, sleep disturbance and confusion. *Id.*   It was Dr. Skurla's opinion that Plaintiff could not do any significant work activity beyond routine activities of daily living.  *Id.*

A second Attending Physician's Statement was prepared by Dr. Skurla on September 24, 1997.  Tr. 523.  His diagnosis and findings were essentially unchanged from January, 1996.  *Id.*  A third Attending Physician's Statement was prepared by Dr. Skurla on July 18, 2000.  Tr. 522.  At that time Dr. Skurla's primary diagnosis was Chronic Fatigue Syndrome.  *Id.*  He also reported a neurohormonal imbalance as a secondary condition impairing Plaintiff's work capacity.  I*d.*  Her symptoms included extreme tiredness, excessive sleep, fibromyalgia and poor concentration. *Id.*  Dr. Skurla opined that the Plaintiff should not put herself in to any conditions creating stress, should not

work normal or extended work hours, and that she could not do anything beyond routine activities of daily living.  *Id.*

On January 11, 2002, at the request of the Social Security Administration, Dr. Skurla completed a Fibromyalgia Residual Functional Capacity Questionnaire in which he stated that Plaintiff met the American Rheumatological criteria for fibromyalgia.  Tr. 513-17.  He indicated that she had positive tender points at 14 of 18 sites and that her symptoms included nonrestorative sleep, chronic fatigue, morning stiffness, muscle weakness, female urethral syndrome, premenstrual syndrome, numbness and tingling, anxiety and depression.  Tr. 513.  He did not believe that Plaintiff was a malingerer nor did he believe that emotional factors contribute to the severity of her symptoms and functional limitations.  Tr. 514.  Dr. Skurla stated that Plaintiff could lift and carry 10 pounds or less occasionally but never 20 or 50 pounds.  Tr. 515.  He further opined that she could only use her hands to grasp, turn or twist objects 10% of time during a workday, her fingers for fine manipulation 30% of time and her arms for reaching 10% of time.  *Id.*  She could sit continuously for two hours and stand continuously for 20 minutes.  Tr. 516.  Dr. Skurla believed that Plaintiff had a marked limitation in the ability to deal with work stress.  *Id.*

Plaintiff also treated with Dr. David Rosensweet (a.k.a. Laser Nightsky) on a frequent basis from May 28, 1996 to January 28, 2000, reporting many of the same symptoms as she did with Dr. Skurla, although Dr. Rosensweet also focused on Plaintiff's digestive system.  Tr. 239-312, 324-80. Dr. Rosensweet prepared an Attending Physician's Progress statement for UNUM on October 24, 1996.  Tr. 370.  His primary diagnoses were fatigue, sleep disturbance, headache, PMS and candidal enteritis.  *Id.*  Dr. Rosensweet indicated that these diagnoses made "work not possible" for Plaintiff. *Id.*  He believed that rest and therapies would improve Plaintiff's chances of recuperation.  *Id.*

5

Plaintiff also sought treatment from the Southwest Acupuncture College and Chinese Medical Clinic from June 12, 1994 through September 20, 2001.  Tr. 381-476.  Again, Plaintiff's complaints were very similar, if not identical, to those reported to Drs. Skurla and Rosensweet.  *Id.*

Finally, Plaintiff sought counseling from the Southwestern Counseling Center of Southwestern College (SCC).  Tr. 481-511, 553-54.  Her first visit was on October 7, 1998.  Tr. 553-54.  On the Intake Form, Plaintiff stated that her reasons for seeking counseling were "life transition – untie old 'knots.'"  Tr. 553.  The notes from the counselor indicated that Plaintiff came to counseling "to look at the emotional issues tied to her chronic fatigue illness" and issues regarding her perfectionism.  Tr. 554.  The next record from SCC is dated April 4, 2001.[1]  Plaintiff continued to receive counseling from SCC through October 29, 2001.  Tr. 481-511.  With the exception of an undated Treatment Plan, the records in evidence consist of individual session summaries reflecting Plaintiff's discussions with her counselors.  *Id.*  There are no report or evaluations from SCC.  The undated Treatment Plan indicates that Plaintiff's presenting problem was "anxiety and fatigue due to chronic illness and inability to work.  Depressed because of illness and financial worries."  Tr. 511.  Plaintiff's diagnosis was adjustment disorder with mixed anxiety and depression.  *Id.*

In addition to the time she spent with her treating physicians, Plaintiff underwent several consultative evaluations and examinations.  On September 13, 2000, Dr. Eugene Toner, a board certified emergency medicine physician, performed a consultative physical evaluation for the purposes of a social security evaluation.  Tr. 313-20.  Plaintiff provided a history to Dr. Toner and he

---

[1]Plaintiff's counsel indicated that Plaintiff's records from SCC between the initial visit of October 7, 1998 and April 4, 2001 were impossible to obtain.  There is no evidence in the record regarding the number of visits she had, the dates of any such visits or whether any reports or evaluations were done.

performed a physical examination. *Id.* Dr. Toner opined that Plaintiff had no limitations regarding her ability to lift, carry, stand, walk or sit. Tr. 319-20. Nor did he find any limitation in overhead reaching, handling of objects or fine manipulation with hands or fingers. Tr. 320. In his assessment, Dr. Toner stated, "Complaints of chronic fatigue syndrome and fibromyalgia with no objective tested abnormalities available to me." Tr. 315. In his Remarks, he noted, "She is carrying a diagnosis of fibromyalgia according to some medical notes. I have recommended that this claimant send any abnormal test to social security so that these can be properly evaluated. The results of the examination are fairly normal and I would not recommend any specific restrictions based on this examination." *Id.*

On October 19, 2000, Dr. Raoul B. Berke, performed a consultative psychiatric evaluation. Tr. 321-23. His diagnosis was Dysthymic Disorder and Generalized Anxiety Disorder. Tr. 323. A Psychiatric Review Technique was completed by E. Chiang, M.D. on October 31, 2000. Tr. 324-37. Dr. Chiang found that Plaintiff suffered with Dysthymia but found that her impairment was non-severe. *Id.*

On November 1, 2000 a Physical Residual Functional Capacity Assessment form was completed by M.A. Yoder, M.D., who relied on the physical examination performed by Dr. Toner on September 13, 2000. Tr. 352-59. Dr. Yoder assigned Plaintiff a medium RFC "to take into account complaints of fatigue." Tr. 353. Dr. Yoder concluded his report by stating that he saw "no objective reason for her activities to be limited." Tr. 358.

## SUMMARY OF THE ALJ'S DECISION

At step one of the sequential analysis, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. Tr. 29. The ALJ found at step two that

Plaintiff had a severe musculoskeletal impairment and a non-severe mental impairment.  Tr. 29.  At step three, the ALJ found that Plaintiff did not have any impairment that met or medically equaled a Listed Impairment.  Tr. 30.  The ALJ found at step four that Plaintiff retained the residual functional capacity for a full or wide range of light work and able to perform her past relevant work as an administrator/bookkeeper.  Tr. 31.

## ANALYSIS

### WHETHER THE ALJ'S FINDINGS THAT PLAINTIFF CAN PERFORM LIGHT WORK IS SUPPORTED BY SUBSTANTIAL EVIDENCE

The Plaintiff alleges that the ALJ's finding that Plaintiff could perform light work is unsupported by substantial evidence and is legally erroneous.  Plaintiff asserts five claims of error in relation to this finding: 1) the ALJ erred in applying the treating physician rule, 2) the ALJ erred in failing to consider Plaintiff's Chronic Fatigue Syndrome, 3) the Residual Functional Capacity finding is not supported by the cited evidence or other evidence, 4) the ALJ erred in his Step-Four analysis, and 5) the ALJ's credibility finding is not supported by substantial evidence and is based on error.

### 1. WHETHER THE ALJ ERRED IN APPLYING THE TREATING PHYSICIAN RULE

Plaintiff alleges that the ALJ failed to comply with the legal requirements when analyzing the opinions of Plaintiff's treating physicians.  Specifically, Plaintiff argues that the ALJ failed to give her treating physicians' opinions either controlling weight or the deference they were entitled to and then failed to articulate the specific reasons for rejecting those opinions.  "An ALJ is required to give controlling weight to a treating physician's well-supported opinion, so long as it is not inconsistent with other substantial evidence in the record."  *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001).  When disregarding the opinion of a treating physician, the ALJ must give "specific,

legitimate reasons" for his opinion. *Frey v. Bowen,* 816 F.2d 508, 513 (10th Cir. 1987). Further, the ALJ must consider the following specific factors to determine what weight to give any medical opinion:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support of contradict the opinion.

*Drapeau,* 255 F.3d at 1213, citing *Goatcher v. United States Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995).

In his decision, the ALJ concluded that "the opinions of the medical consultant and consultative examiner are more persuasive" than those of Plaintiff's treating physicians, Dr. Skurla and Dr. Rosensweet. Tr. 31. The ALJ reasoned that the findings of Plaintiff's treating physicians were not supported by objective signs or clinical findings, that the findings of the treating physicians were inconsistent with Plaintiff's activities according to her testimony; and that Plaintiff's alleged "extreme debilitating symptoms" would be obvious to other examiners, which they were not. *Id*. However, the ALJ failed to give any specific, factual basis for his opinion nor did he address any of the unique aspects of fibromyalgia or chronic fatigue syndrome.

The only physical examination performed by a consultative examiner was the physical evaluation done by Dr. Toner on September 13, 2000. Tr. 313-20. Dr. Toner, an emergency medicine physician, acknowledged that Plaintiff had been diagnosed with chronic fatigue syndrome and fibromyalgia but failed to show any understanding of how either of those conditions were evaluated or diagnosed. His report is devoid of any discussion regarding these conditions and

whether he is qualified to make either diagnosis.  Nevertheless, the ALJ stated that he found the opinion of Dr. Toner more persuasive than those of Plaintiff's treating physicians.

Additionally, the ALJ failed to address the Fibromyalgia Residual Functional Capacity Questionnaire completed by Dr. Skurla on January 11, 2002.  Tr. 513-17.  This document was provided to Dr. Skurla by the Social Security Administration and specifically addresses the peculiar diagnostic issues concerning fibromyalgia.  *Id.*  This is the only document of its kind in evidence. It specifically addresses the criteria used for diagnosing fibromyalgia and the results of Dr. Skurla's evaluation of Plaintiff.  *Id.*  Nor does the ALJ address the disparate finding of Dr. Toner and Dr. Skurla as they relate to Plaintiff's ability to lift, carry, stand, walk, sit reach or handle objects.  It was Dr. Toner's opinion that Plaintiff had no limitation in her ability to lift, carry, stand, walk, sit, reach or handle objects.  Tr. 319-20.  Dr. Skurla, on the other hand, found that Plaintiff's ability to do all of those things was limited.  Tr. 515-16.

When the ALJ does not provide an explanation for rejecting medical evidence, this Court cannot meaningfully review the ALJ's determination.  *Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001), citing *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996)(holding '[i]n the absence of ALJ findings supported by specific weighing of the evidence, we cannot assess whether relevant evidence adequately supports the ALJ's conclusion"); *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)(holding ALJ's listing of factors he considered was inadequate when court was "left to speculate what specific evidence led the ALJ to [his conclusion]".).

Moreover, the ALJ has the responsibility to ensure that "an adequate record is developed during the disability hearing consistent with the issues raised."  *Henrie v. U.S. Dept. of Health & Human Servs.*, 13 F.3d 359, 360-61 (10th Cir. 1993).  The responsibility to develop the record may

require the ALJ to order a consultative examination. *See Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997).

In this case, the ALJ failed to make the requisite findings regarding his decisions that the consultative examiners were more persuasive than Plaintiff's own treating physicians. Thus, remand is necessary. On remand, the ALJ shall fully set forth his findings in accordance with the law or, in the alternative, order a consultative examination by a physician qualified to diagnose fibromyalgia and chronic fatigue syndrome.

### 2. WHETHER THE ALJ ERRED IN FAILING TO CONSIDER PLAINTIFF'S CHRONIC FATIGUE SYNDROME

Plaintiff alleges that the ALJ failed to address her allegation of debilitating Chronic Fatigue Syndrome (CFS) and that such failure is "fundamental error and, as a result, his decision is not supported by substantial evidence." In the Disability Report Adult, that was submitted on May 18, 2000, Plaintiff listed CFS as one of the "illnesses, injuries or conditions" that limit her ability to work (Tr. 120-29) and there are repeated references to this condition throughout the record. Plaintiff is correct in stating that all impairments must be considered in a disability decision. *Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989) ("must consider all relevant evidence of record in reaching conclusion as to disability"). The ALJ may have considered Plaintiff's CFS in reaching his decision, but it is impossible to tell whether he did so or not by reading his decision. As explained above, it is not the role of this Court to speculate what evidence led the ALJ to his conclusion. *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). Accordingly, remand is appropriate for the ALJ to either consider Plaintiff's chronic fatigue syndrome or to articulate his findings regarding the CFS.

### 3. WHETHER THE RFC FINDING IS SUPPORTED BY THE EVIDENCE

The ALJ concluded that Plaintiff "retains the residual functional capacity for a full or wide range of light work." Tr. 31. Plaintiff states that she cannot find any medical opinion evidence or record that indicates a light RFC. In light of this Court's findings regarding the ALJ's analysis of Plaintiff's fibromyalgia and chronic fatigue syndrome, there is not sufficient information before this Court to address this issue.

### 4. WHETHER THE ALJ ERRED IN HIS STEP-FOUR ANALYSIS

The Plaintiff contends that the ALJ erred in his step-four analysis when he failed to set forth an explanation of Plaintiff's symptoms and pain on her ability work. As noted above, the record before this Court is not developed enough for a determination to be made regarding whether the ALJ erred in his step-four analysis. Until the issues regarding Plaintiff's alleged fibromyalgia and CFS are resolved, this issued cannot be addressed.

### 5. WHETHER THE ALJ'S CREDIBILITY FINDING IS SUPPORT BY SUBSTANTIAL EVIDENCE

In discussing Plaintiff's RFC, the ALJ stated, "I am unable to fully credit the claimant's testimony about the persistence, intensity and frequency of her limitations for the same reason: the lack of objective support for her symptoms and her very wide range of high-level activities and assessed vocational ability." Plaintiff argues that this finding by the ALJ is not supported by substantial evidence.

Findings as to credibility should be closely and affirmatively linked to substantial evidence. *Huston v. Bowen,* 838 F. 2d 1125, 1133 (10th Cir. 1988). The ALJ must explain why the specific evidence relevant to each factor led him to conclude that Plaintiff's subjective complaints were not credible. *Kempler v. Chater,* 68 F.3d 387 (10th Cir. 1995).

12

The ALJ's decision addressed Plaintiff's testimony in general terms, however, a thorough discussion and analysis was not done.  The ALJ did not give any specific reasons for the lack of weight given to Plaintiff's testimony.

The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision.  The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.  This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision.  The reasons given by the ALJ for disregarding Plaintiff's testimony and evidence were insufficient for this Court to fairly review this decision.  On remand, the ALJ will fully document his credibility findings or, if necessary, re-evaluate Plaintiff's credibility.

WHETHER THE ALJ ERRED IN ASSESSING PLAINTIFF'S MENTAL IMPAIRMENT

Plaintiff argues that the ALJ erred in finding that she had a "non-severe mental impairment." Tr. 29.  Plaintiff contends that because the ALJ did not evaluate the effect of Plaintiff's impairment on her ability to perform basic mental activities, the ALJ's decision is not supported by substantial evidence and based on error.

A severe mental impairment is a non-exertional limitation that must be considered by the Commissioner if there is evidence to support the existence of the impairment.  *Cruse v. U.S. Dep't of Health & Human Serv.*, 49 F.3d 614, 619 (10th cir. 1999).  A Claimant's mental impairment must also be evaluated in combination with the effects of other impairments.  *Hargis v. Sullivan,* 945 F.2d 1482, 1491 (10th Cir. 1991).

13

This Court finds that the ALJ did not err in his analysis of Plaintiff's alleged mental impairment. There is nothing in the record that would support Plaintiff's contention that she has a severe mental impairment. Plaintiff has failed to meet her burden.

## WHETHER THE ALJ ERRED IN FAILING TO CONSIDER THE ENTIRE PERIOD UNDER ADJUDICATION

Plaintiff asserts that the ALJ erred by failing to consider the entire period under adjudication. Although Plaintiff's argument is unclear, as this matter is being remanded on other grounds, the Commissioner is ordered to make specific findings regarding both Title II and Title XVI benefits available to Plaintiff.

## CONCLUSION

In sum, I find that the ALJ's determination that Plaintiff can perform light work was not supported by substantial evidence and should be reversed.

Where a decision by the Commissioner is reversed, this Court has discretion to remand the case for further administrative proceedings or to order an immediate award of benefits. *Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993). Because I do not think the evidence presently in the record is sufficient to determine whether Plaintiff can perform light work, I find that remand in accordance with that outlined above is appropriate.


**W. DANIEL SCHNEIDER**
**United States Magistrate Judge**

14